POLEN, J.
The underlying facts of this case are not new to this court. In Caulkins Indiantown Citrus Co., v. Nevins Fruit Co., 831 So.2d 727 (Fla. 4th DCA 2002), this court significantly, detailed underlying facts which set the stage for the parties to this lawsuit. Lacene Orvis was an employee of Caulkins Indiantown Citrus Co. After her termination, she filed a one count complaint seeking damages under the Florida Private Whistleblowers’ Protection Act. After a two week jury trial, the jury found in favor of the defendant and the plaintiff filed this appeal. For the reasons outlined below, we reverse that judgment and remand the case for a new trial.
After she left Caulkins, Orvis entered into consultation agreements with other citrus growers for consulting services, including “expert witness services,” regarding their potential legal claims against Caulkins. Orvis was to be paid the lesser of $250,000 per year or ten percent of any recovery against Caulkins. Caulkins had moved to exclude her testimony in cases in which other growers had made claims against Caulkins on the ground that these agreements provided for a contingent fee for either factual or expert testimony, in violation of rule 4-3.4(b), Rules Regulating The Florida Bar. The trial court indicated that it considered the agreements to be illegal and unenforceable.
Prior to trial, plaintiffs counsel made a motion in limine seeking to preclude any evidence or questions regarding the alleged impropriety of the contracts entered into between Orvis and the growers, or the alleged impropriety in the solicitation of growers to file claims against Caulkins. In addition, the motion sought to preclude any mention that plaintiffs attorney and his firm, Searcy, Denny, et al., engaged in any wrongdoing in their involvement with drafting the contract between Orvis and the growers. The trial court granted plaintiffs motions.
In violation of the order in limine, on cross examination, defense counsel asked Orvis, “now, Mrs. Orvis, at some point, you learned that this agreement is illegal, did you not?” After refreshing his memory of the order in limine, Defense counsel acknowledged that the question was improper.
Orvis first contends a new trial is necessary due to defense counsel’s admitted violation of the order in limine. Caul-kins responds that the violation was inadvertent and that the improper question, in light of the facts of this case, did not result in an unfair trial. ■
The trial court’s ruling on a motion for a new trial is within the broad discretion of the trial judge, and an order on such a motion should not be disturbed on appeal absent a showing of a clear abuse of discretion. Baptist Mem’l Hosp., Inc. v. Bell, 384 So.2d 145, 146 (Fla.1980). If reasonable persons could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable arid there can be no finding of an abuse of discretion. Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980). Not every violation of a pretrial order in limine automatically results in a new trial. Leyva v. Samess, 732 So.2d 1118 (Fla. 4th DCA 1999).
In Fischman v. Suen, 672 So.2d 644 (Fla. 4th DCA 1996), this court reversed a trial court’s denial of a motion for a new trial based on a violation of an order in limine. Fischman involved two doctors that joined practice together and signed a restrictive covenant. The cause of action *1183 arose when one of the doctors left and sought damages based on unpaid wages and sought recision of the restrictive covenant. The other doctor filed a counterclaim seeking damages pursuant to the covenant. The plaintiff contended that the other doctor wanted him to engage in Medicare fraud. Before trial the defendant moved in limine to preclude the other doctor from mentioning anything about Medicare fraud. That motion was granted. However, while the plaintiff was on the stand, he mentioned that one of the reasons he wanted to leave was the other doctor wanted him to commit Medicare fraud. A timely objection was made. The trial court instructed the jury to disregard everything about Medicare fraud and denied the defendant’s motion for mistrial, acknowledging that the issue was close. The jury ultimately returned a verdict in favor of the plaintiff. Id. at 645.
In reversing the trial court’s ruling in Fischman, this court pointed out that courts have reversed for violations of orders in limine involving subsequent remedial measures and disclosure of a traffic homicide investigator’s conclusions. Id. (citing Walt Disney World Co. v. Blalock, 640 So.2d 1156, 1158-59 (Fla. 5th DCA 1994); Ratley v. Batchelor, 599 So.2d 1298, 1301-02 (Fla. 1st DCA 1991)). However the opinion comments that those types of in limine violations are less flagrant than the one in Fischman, because the violation in Fischman involved “an accusation of criminal conduct difficult for a jury to ignore.” Id. at 645. The opinion goes on to say that “[wjhile a curative instruction might alleviate a more benign evidentiary gaffe, the instruction in this case may have amplified the prejudice to Fischman. This was a close case. The credibility of the two doctors was central to the contract issues presented to the jury.” Id. at 646.
This court distinguished and discussed Fischman in Leyva. In Leyva, this court reversed a trial court’s order granting a new trial based on a violation of an order in limine. Leyva was a case resulting from a motor vehicle accident. The defendant was a doctor. Prior to trial, defendant’s attorney moved in limine to prevent the plaintiffs attorney from referring to the defendant as Dr. Samess because he thought it would give the jury the impression he had a lot of money. The trial court ruled that the defendant could be referred to as a doctor during voir dire, but not during trial. In fact, he was referred to as a doctor during voir dire. Id. at 1120. However, in violation of the order in li-mine, plaintiffs counsel also referred to the defendant as Dr. Samess during closing argument. The trial court held, citing Fischman, that due to the egregious violation of an order in limine, a new trial was warranted. On appeal, this court disagreed, explaining as follows:
In Fischman, the defense violated an order in limine, which prohibited witnesses from making any mention of medicare fraud. Our court explained that “[t]he unsubstantiated allegation of medicare fraud is precisely the type of inflammatory matter which should be extinguished by an order in limine.” See id. at 645. (emphasis supplied). Because a defense witness’s testimony that the plaintiff told him to “basically to commit medicare fraud” constituted an accusation of criminal conduct in a trial where the credibility of the two parties was central to the issues, our court felt that the violation of the pretrial order was egregious enough to warrant a new trial. Our characterization of the violation as “egregious” was a comment on the nature of the testimony as it related to the facts of the case, and not an *1184 observation concerning whether the violation of the order was intentional.
Id. at 1121.
Like Fischman, the improper question in this case involved “an accusation of criminal conduct difficult for a jury to ignore.” Moreover, also like Fischman, the curative instruction given by the judge here may have amplified the prejudice to Orvis. Not only, as Orvis accurately points out, was the question the culmination of a long line of questions involving the consultation agreements, the question came at the end of this lengthy trial. Finally, where in Fischman the credibility of the two doctors was central to the issues presented to the jury, in this case, the credibility of Orvis was critical to the issue sent to the jury. In fact, the answer brief submitted by Caulkins emphasizes the import of Orvis’s credibility at trial. Caul-kins argues, inter alia, the following:
First, except for her own self-serving characterizations, there was no evidence that the manner in which Caulkins accounted for its pool returns was criminal
[[Image here]]
Second, other than Orvis’s self-serving testimony regarding supposed objections made to her management behind closed doors every objective fact and document establishes that not only did Orvis not object, she pro-actively endorsed and praised the manner in which Caulkins’ accounted for pool return over the seven years in issue....
Although these arguments were made in support of Caulkins’s assertion that Orvis received a fair trial because she had no cognizable claim to begin with, the argument demonstrates that Orvis’s credibility was a key factor in this case. Thus, we find Fischman persuasive and hold that the trial court abused its discretion in failing to grant the motion for a new trial.
Orvis’s second argument on appeal is that the trial court erred in limiting its ability to show the economic impact of Caulkins’s behavior as it related to the way Caulkins calculated the pool returns. Orvis sought to have Soneet Kapila, a forensic accountant who had .previously worked on the related Nevins case, testify as to the financial gain Caulkins recognized as a result of the change in the way Caulkins calculated pool returns. Plaintiffs counsel claimed this testimony was necessary in light of the Defendant’s attempt to categorize this case as a $54,000 claim based on the jury verdict in Nevins. There was evidence of a two million dollar settlement payment made by Caulkins. However, Plaintiff claimed that Kapila’s testimony would demonstrate that Caul-kins behavior resulted in, and was motivated by, more than a six million dollar benefit to Caulkins.
During trial, Plaintiffs counsel sought to ask Kapila what percentage of the overall pool he was trying to figure out when he was doing the analysis on the Nevins case. Plaintiffs counsel explained that what he was trying to elicit was that the amount at issue in Nevins was a small piece of the overall pie.. Defense counsel objected and argued that the information was irrelevant. After hearing argument on the matter, the trial court agreed that the jury was entitled to hear that there was more than a $54,000 benefit to Caulkins as a result of the pool calculation changes.. However, the court ruled that the jury should not be given a number that included growers who were not involved with Caulkins prior to the change in calculations. The court reasoned that those parties “weren’t damaged by the change because they came in without the historical basis of it.” It is this ruling that Orvis now contends was erroneous. We agree.
*1185 We recognize that at the time of the trial court’s ruling, the Nevins opinion had not yet been issued. However, in Nevins, this court held that those growers who entered into the contract with Caulkins even after the method of calculations changed, had a potential claim. It follows, we think, that Caulkins was arguably motivated by the financial benefits from those growers as well. The trial court’s ruling in this evidentiary matter is inconsistent with Nevins. As a result, we find the trial court’s preclusion of evidence on this basis erroneous.
REVERSED AND REMANDED for a new trial consistent with this opinion.
KLEIN and STEVENSON, JJ., concur.